UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:08CV-26-R

GARY W. MUFFLEY                                                    PETITIONER

v.

APL LOGISTICS MANAGEMENT                                          RESPONDENT
WAREHOUSE SERVICES, INC.

## MEMORANDUM OPINION

This matter comes before the Court on the Petition of Gary W. Muffley, Regional Director of the Ninth Region of the National Labor Relations Board ("Board"), for and on behalf of the Board, to enjoin Respondent APL Logistics Management Warehouse Services, Inc. from failing and refusing to recognize and bargain with International Chemical Workers Union Council, Local 692C/United Food & Commercial Workers International Union, AFL-CIO-CLC ("Union") as the exclusive collective-bargaining representative of employees in the unit represented by the Union and from making unilateral changes in the wages and other terms and conditions (Docket #1).   On January 14, 2008, Petitioner filed a Supplemental Memorandum in support of the petition (Docket #7). On January 30, 2008, Respondent filed a Motion to Strike Exhibits 14 and 15 to the Petitioner's Supplemental Memorandum (Docket #16).   Respondent also filed a response to the Petition for Injunction on January 30, 2008 (Docket #17).  Petitioner filed a reply to Respondent's Memorandum Opposing the Petition for Injunction and a Response to Respondent's Motion to Strike on February 6, 2008 (Docket #18).  Respondent filed a reply to Petitioner's Memorandum on February 20, 2008 (Docket #24).  This matter is now ripe for adjudication.  For the reasons that follow, Respondent's Motion to Strike is DENIED and Petitioner's Petition for Injunction is GRANTED.

## BACKGROUND

On September 11, 2007, the Union filed a charge in Case 9-CA-43858.  On November 27, 2007, the Union filed a charge in Case 9-CA-44009.  Both charges were investigated by Petitioner. On December 21, 2007, Petitioner, acting on behalf of the General Counsel of the Board, pursuant to Section 10(b) of the of the National Labor Relations Act ("Act"), issued a consolidated complaint alleging, *inter alia*, that Respondent has been engaging in conduct violative of Section 8(a)(1) and (5) of the Act.  The administrative hearing on the allegations of the consolidated complaint commenced on January 23, 2008.

On January 7, 2004, the Board certified the Union as the collective-bargaining representative for the following unit of Respondent's employees:

> All full-time and regular part-time warehousing employees employed by the Employer at its Shepherdsville, Kentucky facility, but excluding all office clerical employees, all employees employed by temporary agencies, all professional employees, administrative assistants, and guards and supervisors as defined in the Act.

Respondent unsuccessfully tested the Board's certification and the parties began bargaining in 2006, culminating in an initial collective-bargaining agreement effective by its terms from September 11, 2006 to September 10, 2007.

On July 10, 2007, an employee filed a decertification petition with the Board in Case 9-RD-2144, seeking an election to decertify the Union.  Despite the decertification petition, Respondent and the Union commenced bargaining for a successor agreement around August 9, 2007.

On September 11, 2007, Respondent informed the Union, orally and in writing, that it was withdrawing recognition.  Respondent based its decision to withdraw recognition on a petition, herein called the "antiunion petition," that was purportedly submitted to it by bargaining unit

employees.   The antiunion petition states that the signatories desire Respondent to withdraw recognition from the Union in the event it is signed by fifty percent or more of the employees represented by the Union.  The antiunion petition contains thirty-one signatures dated from June 12 through June 19, 2007.  An employee payroll list dated September 10, 2007, contained a total of fifty-eight bargaining unit employee names who were employed on September 10, 2007.  Twenty-nine of the thirty-one employees whose names and signatures appear on the antiunion petition were also listed on the September 10, 2007 employee payroll list.

To demonstrate that it represented a majority of Respondent's employees at the time Respondent withdrew recognition, the Union provided Petitioner with a prounion petition containing thirty-six employee signatures, thirty-four of whom were on the September 10, 2007 payroll list. The prounion petition was circulated from August 21 to September 9, 2007.  Twelve of the employees who signed the antiunion petition subsequently signed the prounion petition submitted by the Union.

On October 1, 2007, Respondent granted employees in the unit a nine percent across-the-board wage increase and reinstated performance based merit increases, a practice that had been eliminated with the implementation of the recently expired collective-bargaining agreement. Respondent failed to notify the Union or give it an opportunity to bargain about the wage increase.

The instant petition was filed on January 8, 2008.

### STANDARD

Section 10(j) of the Act authorizes United States district courts to grant temporary injunctions pending the Board's resolution of unfair labor practice proceedings.  29 U.S.C. § 160(j). Section 10(j) was intended to prevent the potential frustration or nullification of the Board's

remedial authority caused by the passage of time inherent in Board administrative litigation. *Kobell v. United Paperworkers Int'l Union*, 965 F.2d 1401, 1406 (6th Cir. 1992).

Before the district court may order temporary injunctive relief, it must make two findings: (1) whether there is reasonable cause to believe that the alleged unfair labor practices have occurred, and if so, (2) whether injunctive relief is just and proper. *Id.* The petitioner's burden in proving reasonable cause is relatively insubstantial. *Levine v. C & W Mining Co.*, 610 F.2d 432, 435 (6th Cir. 1979). The district court must accept the petitioner's legal theory as long as it is substantial and not frivolous. *Fleischut v. Nixon Detroit Diesel*, 859 F.2d 26, 29 (6th Cir. 1988). Factually, the petitioner need only produce some evidence in support of the petition; the district court "need not concern itself with resolving conflicting evidence if facts exist which could support the Board's theory of liability." *Kobell*, 965 F.2d at 1406-07 (quoting *Nixon Detroit Diesel*, 859 F.2d at 29). Injunctive relief is just and proper under Section 10(j) where it is "necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA" and where achieving status quo is possible. *Id.* at 1410 (quoting *Gottfried v. Frankel*, 818 F.2d 485, 495 (6th Cir. 1987)). The status quo referred to is that which existed before the charged unfair labor practices took place. *Nixon Detroit Diesel*, 859 F.2d at 30 n.3.

## DISCUSSION

### I.   REASONABLE CAUSE

An employer is permitted to withdraw recognition from a union following expiration of a collective-bargaining agreement if the employer has evidence that the majority of its employees no longer support the union. *Parkwood Developmental Ctr., Inc.*, 2006 NLRB LEXIS 339, at *9 n.10 (Aug. 22, 2006). In order for an employer to lawfully withdraw recognition from a union there must

be proof of an actual loss of majority at the time recognition is withdrawn. *Levitz Furniture Co. of the Pac.*, 333 N.L.R.B. 717, 717 (2001). Petitioner argues that the evidence shows that there was no actual loss of majority support for the union at the time that Respondent withdrew recognition on September 11, 2007, as the Union obtained evidence of majority support postdating the antiunion petition and predating the withdrawal or recognition and additionally because Respondent cannot rely on twelve of the employee signatures on the antiunion petition to show loss of support as those twelve employees subsequently signed the prounion petition.

The antiunion petition states that the signatories desire Respondent to withdraw recognition from the Union in the event it is signed by fifty percent or more of the employees represented by the Union. The petition was signed by thirty-one employees. At the time that Respondent withdrew recognition from the Union on September 11, 2007, a total of fifty-eight bargaining unit employees were employed by Respondent. Twenty-nine of the thirty-one employees whose names and signatures appear on the antiunion petition were employed by Respondent on that date. This effectively reduces the number of valid signatures to twenty-nine, or fifty percent of the unit. *See Highlands Hosp. Corp.*, 2006 NLRB LEXIS 376, at *10-11 (Aug. 31, 2006), *enforced*, 508 F.3d 28 (D.C. Cir. 2007).

Evidence that fifty percent of the employees in the bargaining unit do not want the Union would be sufficient to support a withdrawal of recognition. *See Renal Care of Buffalo, Inc.*, 2006 NLRB LEXIS, at *5 (Aug. 31, 2006). However, Petitioner argues that the fact that fifty percent of the employees opposed the Union in June 2007 does not validate Respondent's withdrawal of recognition in September 2007, because at that time of withdrawal enough signatories had signed the prounion petition to demonstrate that the Union had not lost majority support. As evidence for

5

this assertion, the Union submitted two copies of the prounion petition.  Respondent argues that this petition cannot constitute evidence of majority status as the majority of signatures on the prounion petition have not been properly authenticated.

In *HQM of Bayside, LLC*, the Board examined the effect of "crossover signatures" on two petitions, the first opposed to the union and the second supporting the union.  2006 NLRB LEXIS 467, at *3-4 (Sept. 29, 2006).  Twelve employees had first signed the petition opposing the union and then, within two months, signed the petition supporting the union.  *Id.*  The Board held that the employer could not rely on these twelve crossover signatures in withdrawing recognition.  *Id.* at *7. Likewise, in *Highlands Hospital Corp., Inc.*, the Board refused to count as evidence of an actual loss of majority status the signature of an employee on an antiunion petition who, after signing the antiunion petition, signed an authorization card and began paying union dues from her paycheck. 2006 NLRB LEXIS 376, at *15.

Here twelve employees who signed the antiunion petition also signed the prounion petition. Respondent argues that this Court cannot rely on these signatures as they were not all authenticated. *See Stop N' Go, Inc.*, 279 N.L.R.B. 344, 344 (1986) (rejecting union authorization cards as evidence of union's majority status where General Counsel failed to authenticate those cards).  However, three of these twelve signatures have been authenticated by Justus Embry.[1]  Respondent argues that two of these signatures must be rejected as two of the signers, Kathy Peake and Art Bagby, were mislead by Union supporters into believing that their signatures on the prounion petition were simply intended to get a revote.  *See Laverdiere's Enters.*, 297 N.L.R.B. 826, 827 (1990).  However, disregarding these two signatures, there is still the crossover signature of Tammy Blevins, which this

---

[1]  These are the signatures of Kathy Peake, Art Bagby, and Tammy Blevins.

6

Court finds cannot be relied upon by the Respondent in withdrawing recognition from the Union. *HQM of Bayside*, 2006 NLRB LEXIS 467, at *7. Thus only twenty-eight of fifty-eight employees opposed the Union on the date Respondent withdrew recognition; less than fifty percent of employees.

The Court finds that there is reasonable cause to believe that the alleged unfair labor practices have occurred as employer may lawfully withdraw recognition from a union only where proof of an actual loss of majority exists at the time recognition is withdrawn. *Levitz Furniture Co. of the Pac.*, 333 N.L.R.B. at 717.

## II.     JUST AND PROPER

Petitioner argues that injunctive relief is just and proper here as, absent interim bargaining, Respondent's refusal to deal with the Union threatens to irreparably undermine employee support necessary for effective collective bargaining and to negate the efficacy of the Board's final bargaining order. Respondent asserts that such relief is not just as proper as a final order of the Board is likely to be as effective as an interlocutory order by this Court. Respondent also argues that the novel nature of Petitioner's legal theory renders injunctive relief inappropriate. Additionally, Respondent states that the petition should be denied as a result of Petitioner's unclean hands.

### A.     Employee Support

The longer a union is kept from working on behalf of employees, the less likely it is that it will be able to organize and represent those employees effectively if and when the Board orders the company to commence bargaining. *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 299 (7th Cir. 2001). Years may pass before the Board reaches the merits of a case. *See NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir. 1996). "The deprivation to employees from the delay in

bargaining and the diminution of union support is immeasurable." *Id.* Assuming that the Board ultimately orders Respondent to bargain with the Union, such a forward-looking order cannot fully compensate Respondent's employees for the variety of benefits that good-faith collective bargaining with the Union might otherwise have secured for them in the present. *Bloedorn*, 276 F.3d at 299.

The Court determines that such concerns exist in the instant case and finds that an injunctive order is "necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA."[2] *Kobell*, 965 F.2d at 1410 (quoting *Gottfried*, 818 F.2d at 495).

**B.   Novel Theory**

Respondent argues that Petitioner is asking this Court to expand existing law by holding that an otherwise lawful withdrawal of recognition can be rendered unlawful by evidence that is not in the employer's possession at the time it withdraws recognition. Respondent states that in all of the cases cited for support by Petitioner, the union provided the employer with evidence of majority status before the employer withdrew recognition. Here Respondent was not provided with evidence of the prounion petition until after withdrawing recognition.

In *Silverman v. 40-41 Realty Associates, Inc.*, 668 F.2d 678, 680 (2d Cir. 1982), the court concluded that injunctive relief under section 10(j) could not be just and proper where the legal

---

[2]   Respondent cites to *Calatrello v. American Church, Inc.*, No. 1:05cv797, 2005 WL 1389042 (N.D. Ohio June 9, 2005), in support of its contention that injunctive relief is not just and proper. In *Calatrello*, the Court stated that "without convincing evidence that the Union's loss of support is permanent and cannot be restored if the Board orders [Respondent] to recognize the Union and honor the contract benefits, this case presents no unique harm that would separate it from any other case before the Board." *Id.*, at *4. However, the *Calatrello* court relied on an incorrect standard for determining whether injunctive relief is just and proper. The just and proper standard is less stringent that traditional equitable principles and does not require consideration of elements such as irreparable harm. *Kobell*, 965 F.2d at 1409 n.3.

theory advanced by the petitioner involves an "unprecedented application of the Act," or where the issue in a given case is "a difficult one that had not been considered by any court."  However, the court found that relief was appropriate in cases where "the prevailing legal standard is clear and the only dispute concerns the application of that standard to a particular set of facts."  *Id.* at 681.

In *HQM of Bayside, LLC*, a case cited by Respondent, the court stated, "The union does not have to demonstrate conclusively to the employer prior to the withdrawal of recognition that it still has majority status.  Rather, it is the employer's burden to show an actual loss of the union's majority support at the time of the withdrawal of recognition."  2006 NLRB LEXIS 467, at *8-9 (footnotes omitted).  "An employer with objective evidence that the union has lost majority support -- for example, a petition signed by a majority of employees in the bargaining unit -- withdraws recognition at its peril."  *Id.* at *8 (quoting *Levitz*, 333 N.L.R.B. at 725.

This Court does not find Petitioner's legal theory novel; case law makes clear that an employer bears the risk of withdrawing recognition from the union. The burden does not shift when the employer obtains objective evidence of the union's loss of majority support.

## C.    Unclean Hands

Petitioner filed its reply in this case on February 6, 2008.  Petitioner's reply represented to this Court that the crossover signatures on the prounion petition demonstrated that those employees supported the Union when Respondent withdrew recognition on September 11, 2007.  In January 2008, Peake, one of the crossover signatures, received a telephone call from a woman who identified herself as an agent of Petitioner and a representative of the Board.  Petitioner's agent asked Peake if she signed both petitions.  Peake indicated that she had.  Peake stated that she had not read the top of the prounion petition, explaining that she was told the prounion petition was for a revote and that

9

no one would see it.[3]  Peake told Petitioner's agent that she wanted nothing to do with the Union.

Additionally, an agent of Petitioner called Marilyn Smith, a bargaining unit employee who signed

both petitions.  Petitioner's agent asked Smith if she signed both petitions.  Smith told the Board

representative that she signed the antiunion petition but did not to her knowledge sign the prounion

petition and told the Board agent she did not support the Union.  Petitioner failed to disclose these

facts to the Court in its reply.

Respondent asserts that Petitioner has unclean hands which forecloses its request for

injunctive relief as Petitioner knew that at least one signer of the prounion petition was mislead as

to its purpose and that Peake and Smith did not support the Union and failed to disclose these facts

to the Court.

The unclean hands doctrine "closes the doors of a court of equity to one tainted with

inequitableness or bad faith relative to the matter in which he seeks relief."  *Jarrow Formulas, Inc.*

*v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (quoting *Precision Instr. Mfg. Co. v. Auto.*

*Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)).  "[T]he unclean hands defense is not an automatic or

absolute bar to relief; it is only one of the factors the court must consider when deciding whether to

exercise its discretion and grant an injunction."  *Dunlop-McCullen v. Local 1-S*, 149 F.3d 85, 90 (2d

Cir. 1998) (quoting 11A Wright, Miller, Kane, *Federal Practice and Procedure: Civil 2d* § 2946,

at 111.))

Peake stated to Petitioner's agent that she wanted nothing to do with the Union.  However,

---

[3]  Respondent states that Peake indicated that "she never saw anything to read, just a blank sheet to sign."  This gives the impression that the document was blank.  While Peake did make this statement, she also earlier in the affidavit stated that she was given the document "in a folded fashion so that all I could see was the portion that he wanted me to sign."

this comment was made in January 2008 and does not necessarily reflect Petitioner's feelings on September 11, 2007.  Although Peake stated that she was told that the prounion petition was for a revote, she did not state to Petitioner's agent that she would not have signed the prounion petition at the time if she had been told it was in support of the Union's continued representation.  Likewise although Smith told Petitioner's agent that she did not support the Union, this does not necessarily reflect her feelings as of September 11, 2008.  Though Smith states that she did not, to her knowledge, sign the prounion petition, the Court finds her purported signatures on the two documents remarkably similar.

The Court cannot find that Petitioner acted with bad faith relative to the matter at hand. Therefore, this Court finds that the unclean hands doctrine does not bar equitable relief.[4]

## CONCLUSION

For the foregoing reasons, Respondent's Motion to Strike is DENIED and Petitioner's Petition for Injunction is GRANTED.

An appropriate order shall issue.

---

[4] Additionally this Court notes that even if it disregards these two crossover signatures, there is still a sufficient number of authenticated crossover signatures to evidence that the Respondent can not show that the Union had lost majority status on the date of withdrawal of recognition.

11